**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PATRICIA A. VAIL,

              *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL SECURITY,

      *Defendant.*

_____/

CASE NO. 3:21-cv-11783

DISTRICT JUDGE ROBERT H. CLELAND

MAGISTRATE JUDGE PATRICIA T. MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 13, 14)**

**I.       RECOMMENDATION**

Considering the entire record in this case, I suggest that substantial evidence supports the Commissioner of Social Security's determination that Plaintiff, Patricia Vail, is not entitled to widow's benefits.  Accordingly, I recommend that the Court **DENY** Plaintiff's motion for summary judgment, (ECF No. 13), **GRANT** the Commissioner's motion, (ECF No. 14), and affirm the decision.

**II.      REPORT**

    **A.      Introduction and Procedural History**

Plaintiff applied for widow's benefits on October 7, 2016.  (ECF No. 11, PageID.45, 78–80).  The Social Security Administration denied her claim on October 17, 2016, and Plaintiff requested a hearing before an ALJ which was held on August 1, 2019.  (*Id.* at PageID.51, 81–82).  The ALJ issued a decision on August 13, 2019, finding that Plaintiff was not entitled to widow's benefits.  (*Id.* at PageID.48).  The Appeals Council denied

1

review on July 1, 2021. (*Id.* at PageID.35).

Plaintiff then filed a complaint seeking judicial review of the ALJ's final decision on August 3, 2021. (ECF No. 1). This case was referred to the undersigned the next day, and both parties later filed cross-motions for summary judgment. (ECF Nos. 2, 13, 14).

### B.     Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g) (2012). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C. Background

Plaintiff met her husband in March of 1997 and moved in with him the following June.  (ECF No. 11, PageID.58).  Plaintiff's husband worked as a safety engineer, and although he was "mildly obese" and a "heavy smoker," he was otherwise healthy and active.  (*Id.* at PageID.59, 68, 77).  Indeed, Plaintiff's husband worked as a hockey referee in the Birmingham School District for about five years.  (*Id.* at PageID.56, 59, 63).  And although her husband did not regularly "exercise," he enjoyed dancing and was generally "on his feet" while at work.  (*Id.* at PageID.63–65).

About three months after their marriage, Plaintiff's husband was at home watching television with Plaintiff's son.  (*Id.* at PageID.60).  Plaintiff's husband got up from the sofa and walked between thirty and fifty feet to the bathroom.  (*Id.*)  While walking, however, he began breathing heavily and he collapsed once he reached the bathroom.  (*Id.*)  Plaintiff and her son called for an ambulance and performed CPR until medical professionals arrived.  (*Id.* at PageID.61).  But unfortunately, Plaintiff's husband passed away before reaching the hospital.  (*Id.* at PageID.62).

An autopsy report concluded that Plaintiff's husband died of a heart attack.  (*Id.* at PageID.77).  The report noted that Plaintiff's husband suffered from hardened arteries, hypertension, "fatty liver disease, . . ., and mild obesity.  (*Id.*)  It concluded that he died from a heart attack caused by "advanced coronary artery disease" and an "enlarged and mildly dilated heart."  (*Id.*)  The report further noted that his obesity, heavy smoking, and high blood pressure "were probably contributing conditions," and described his death as "natural."  (*Id.*)  Likewise, the decedent's death certificate listed atherosclerotic

cardiovascular disease (a condition in which plaque builds up in the arteries) and hypertension as complications which led to his death.  (*Id.* at PageID.72).

At a hearing before the ALJ, Plaintiff explained that her husband's death was "totally unexpected."  (*Id.* at PageID.65).  She explained that her husband appeared healthy and was not "treating with any doctor for a heart condition . . . ."  (*Id.* at PageID.65).

The ALJ issued a decision on August 13, 2019, in which he found that Plaintiff did not qualify for widow's benefits.  (*Id.* at PageID.48).  Specifically, the ALJ found that Plaintiff was not a "widow" under the act because she was neither married to the decedent for at least nine months nor did she share a child with the decedent.  (*Id.* at PageID.46–48).  Further, while the Act excuses the nine-month requirement where a widow's spouse dies from an accidental injury, the ALJ found that Plaintiff's husband died from natural, preexisting conditions.  (*Id.*)

### D. Arguments and Analysis

The Social Security Act provides benefits to widows of wage-earning husbands.  To qualify for benefits, the widow must: (1) not be married, (2) either be at least sixty years of age or between fifty and sixty years of age and "under a disability," (3) file an application for social security benefits, and (4) not be entitled old age insurance benefits unless they would be less than the "primary insurance amount" of the "deceased individual." 42 U.S.C. § 402(e)(1)(A)–(D) (2018).  The parties do not dispute that Plaintiff met each of these requirements; the sole issue on appeal is whether Plaintiff is a "widow" as defined by the Social Security Act.

Under the Act, a widow is a "surviving wife of" a decedent who either shares a child with the decedent or who was married to the decedent for at least nine months.  42 U.S.C. § 416(c)(1) (2018).[1]  Here, however, Plaintiff neither shares a child with the decedent nor was she married to him for at least nine months.  Although strict, § 416(c)'s requirements are designed to screen out fraudulent claims where individuals enter "sham relationships . . . in contemplation of imminent death."  *Weinberger v. Salfi*, 422 U.S. 749, 781–82 (1975).  By design, however, these safeguards are overinclusive, and they "undoubtedly exclude[] some surviving wives who married with no anticipation of shortly becoming widows . . . ."  *Id.* at 780.  Courts may not circumvent § 416(c)'s requirements simply because they believe that a particular claimant entered into a legitimate marriage; Congress chose to mitigate the risk of fraud "in a specific way" and it is not the "proper role" of the Court to "redesign the statute."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019); *see also Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607, 618 (1992); *McCracken v. Sullivan*, No. 88-5234, 1989 WL 280275, at *3 (C.D. Cal. Oct. 10, 1989).

Still, the statute relaxes its requirements in certain situations where Congress felt that fraud is less likely to have occurred.  42 U.S.C. § 416(c)(2), (k).  But only one of these scenarios might conceivably apply here.  Section 416(k)(1) waives the nine-month requirement where the decedent's death was "accidental" and he otherwise could "have reasonably been expected to live for nine months" at the time of marriage.  A death is accidental if it (1) is "caused by an event that the insured did not expect," (2) was "the

[1] Section 416(c)(1)(F) provides an alternative method by which a surviving wife might constitute a "widow"; however, this subsection is not applicable here.

result of bodily injuries received from violent and external causes," and (3) occurred "as a direct result of these injuries . . . not later than [three] months after" the injuries.   20 C.F.R. § 404.335(a)(2)(i); *see also* 42 U.S.C. § 416(k).

Here, there is no doubt that the decedent was expected to live for at least nine months at the time of marriage, that his heart attack was unexpected, and that his death occurred less than three months after the heart attack.   However, while the decedent's heart attack occurred during a thirty-to-fifty-foot walk, the ALJ reasonably found that this short walk was not an "external" cause, and even if it were, the decedent's heart attack was more likely caused by his preexisting medical conditions than this brief walk.

Neither the statute nor the regulations define the term "external."   42 U.S.C. § 416(k); 20 C.F.R. § 404.335(a)(2)(i).   However, the SSA's Program Operations Manual System ("POMS")[2] provides a commonsense definition—an external cause of a bodily injury is one that "originated outside the body."   POMS GN § 00305.105(A)(3)(b)(1).   Or, in other words, the cause of the injury must be a "traumatic incident" rather than a "bodily disease process."   *McCracken*, 1989 WL 280275, at *2.   This definition includes obvious examples of injuries caused by external forces such as a "fall" while running, an "exercise machine" which "breaks down" during use, or the introduction of bacteria into the body during surgery.   POMS GN § 00305.105(A)(3)(1); *Miller v. Bowen*, 789 F.2d 678, 681–82

---

[2] The POMS is a "policy and procedure manual that employees of the [Social Security Administration] use in evaluating Social Security claims."   *Davis v. Sec'y of Health and Hum. Servs.*, 867 F.2d 336, 340 (6th Cir. 1989).   Although the POMS "does not have the force and effect of law," it is "nevertheless persuasive" authority.   *Id.*

(9th Cir. 1986*); see also Stone v. Heckler*, 715 F.2d 179, 183 (5th Cir. 1983) (holding that homicides constitute accidental deaths). But it also includes internal injuries which are caused by "exertion." POMS GN 00305.105(A)(3)(b)(1). [3]

For "exertion" to constitute an external cause, it must be sufficiently strenuous to be akin to an external force, rather than an internal, bodily process. *See id.* For that reason, only activities which involve "at least moderate effort for the average person" constitute exertion. *Id.* The POMS explains that activities such as "heavy lifting" involve "moderate effort. *Id.* § 00305.01(C)(5). For example, the POMS provides a hypothetical where an individual suffered a heart attack while "lifting and moving heavy" objects on a cool day. *Id.* The individual was generally in "good health and had no "history of cardiac illness" except for an "old infarction." *Id.* The POMS explains that because the individual had no preexisting illness which may have caused the heart attack, the heavy lifting, which constitutes "[m]oderate exertion for the average person," could be considered the cause of the heart attack. *Id.*

By contrast, however, the POMS states that "routine activities" such as standing do not constitute moderate exertion. POMS GN § 00305.105(A)(3)(1). Injuries that result from mild activities like standing are not cause by an outside, external force; rather, they can be better described as injuries which originate within the body. *See* POMS GN § 00305.105(A)(3)(1); *see also Miller*, 789 F.2d at 681–82.

---

[3] If an injury is caused by exertion, then the "violence" element is automatically met. *Id.* § 00305.105(A)(3)(b)(2).

Here, the ALJ relied on substantial evidence in finding that the decedent did no more than walk between thirty and fifty feet, and correctly concluded that this did not amount to moderate exertion.  At the hearing, Plaintiff testified that the decedent walked no more than fifty feet before he collapsed.  (ECF No. 11, PageID.60).  The ALJ believed Plaintiff's testimony, but he reasoned that even if the decedent walked fifty feet, and even if he walked at a "brisk" pace, this would not amount to moderate exertion.  (*Id.* at PageID.47).  The ALJ was correct.  A short walk is not sufficiently strenuous to be comparable to an external force.  *See McCracken*, 1989 WL 280275, at *2.  Indeed, for the average person, a fifty-foot walk would require far less than "moderate effort," and would be more similar to standing than to lifting heavy objects.  POMS GN § 00305.105(A)(3)(1), (C)(5).  Accordingly, substantial evidence supports the ALJ's finding that there was no external force which could have contributed to the decedent's heart attack.[4]

Moreover, even if the decedent's short walk constituted "exertion," the ALJ relied on substantial evidence in finding that this short walk did not cause his heart attack.  Under 20 C.F.R. § 404.335(a)(2)(i), a husband's death must be caused by injuries which are "received from violent and external causes."  In other words, the external factor must contribute to the injury; it cannot merely coincide with the decedent's injury.[5]  20 C.F.R.

---

[4] In his decision, the ALJ wrote that "a walk of thirty to fifty feet, even at a 'brisk' pace, would reasonably be considered moderate or even mild exertion for an average person."  However, as the Commissioner correctly notes, this is nothing more than a typographical error which does not warrant remand.  *See Gomez v. Berryhill*, No. 18-11738, 2019 WL 5680841, at *4 & n.3 (E.D. Mich. June 11, 2019), *report and recommendation adopted by* 2019 WL 3491621 (E.D. Mich. Aug. 1, 2019).  Read in context with the rest of the decision, the ALJ apparently meant to write that a brisk walk "would *not* reasonably be considered moderate or even mild exertion for an average person."

[5] Both the ALJ and the parties discuss POMS GN § 00305.105(A)(c)–(d) which addresses preexisting conditions; however, I suggest that this section does not apply here.  This section addresses situations where

§ 404.335(a)(2)(i).  But here, the ALJ reasonably found that the decedent's preexisting conditions, rather than his walk to the bathroom, caused his heart attack.  (ECF No. 11, PageID.47–48).  Indeed, the decedent suffered from serious cardiac conditions which, on their own, put him at risk of a heart attack.  (*Id.*)  For example, the decedent's autopsy report noted that he had "advanced coronary artery disease (with plaque dissection) and an enlarged heart."  (*Id.* at PageID.77).  The report also noted that he also from undiagnosed arteriosclerosis and hypertension, and the report suggested that the decedent's "[h]igh blood pressure, heavy smoking, and obesity were probably contributing conditions."  (*Id.*)

Considering the decedent's extensive history of advanced cardiac disease, the ALJ reasonably found that the decedent's fifty-foot walk did not trigger his heart attack.  Accordingly, I suggest that because the ALJ relied on substantial evidence in finding that the decedent's death was not the result an injury caused by an external factor, he correctly found that Plaintiff did not satisfy the accidental death exception to the Act's nine-month marriage requirement and he properly concluded that Plaintiff was not entitled to widow's benefits.

**H.      Conclusion**

---

a decedent has suffered an "accidental bodily injury"—i.e., an injury that results from a violent, external, and accidental factor—but also suffers from a preexisting condition which may also have caused death. POMS GN § 00305.105(A)(c)–(d).  The section instructs SSA employees on how to discern whether the injury or the preexisting condition was the proximate cause of death.  *Id.*  Here, however, the issue is not whether a preexisting condition or an injury caused the decedent's death; there is only one possible cause of the decedent's death—his heart attack.  Instead, the issue is whether there the heart attack was an accidental injury to begin with.  Without an accidental injury which may have contributed to the decedent's death, the court cannot reach the issue addressed by this section of the POMS.  *See* POMS GN § 00305.105(A)(3)(b)–(d).

For these reasons, I conclude that substantial evidence supports the ALJ's decision. Consequently, I recommend that the Court **GRANT** Plaintiff's Motion, (ECF No. 13), **DENY** the Commissioner's Motion (ECF No. 14), and affirm the decision.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue

raised in the objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," etc.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Date:  June 27, 2022                                    S/ PATRICIA T. MORRIS
                                                        Patricia T. Morris
                                                        United States Magistrate Judge

11